UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEPHEN T. C.,

   *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

   *Defendant.*
_____/

Case No. 1:23-cv-10821

Patricia T. Morris
United States Magistrate Judge

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

### A. Introduction and Procedural History

Stephen C. appeals the Commissioner of Social Security's final decision to partially deny his application for disability insurance benefits ("DIB"). After he protectively applied for DIB in August 2020, alleging that he became disabled in July 2020, the Administration denied Stephen's claims both at the initial level and on reconsideration. (ECF No. 17-1, PageID.32, 101–04, 119–22, 209–10). Stephen then appealed to an ALJ who, denied his claims after conducting a hearing. (*Id.* at PageID.48–78, 128–29). Next, he appealed the ALJ's decision to the Appeals Council who denied review. (*Id.* at PageID.18–23).

Stephen later filed a complaint seeking judicial review of the ALJ's final

1

decision. (ECF No. 1). Both parties consented to the undersigned, magistrate judge "conducting all proceedings in this case, including entry of a final judgment on all post-judgment matters." (ECF No. 9, PageID.468). The parties have now filed cross-motions for summary judgment. (ECF Nos. 10, 12).

    **B.**    **Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2018). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25

F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

  C.  **Framework for Disability Determinations**

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2018). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this

3

> subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2023); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2023).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to

4

show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2022)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Stephen was not disabled. (ECF No. 7-1, PageID.29, 43). At step one, the ALJ found that Stephen had not engaged in substantial gainful activity since July 17, 2023, his alleged onset date. (*Id.* at PageID.34). At step two, the ALJ concluded that Stephen had the following severe impairments: arthritis, diabetes, neuropathy, carpal tunnel syndrome, and obesity. (*Id.*) The ALJ found that Stephen had several physical impairments—such as hyperlipidemia, "a chronic cough," and headaches—that were either nonsevere or not medically determinable. (*Id.* at PageID.35). In addition, the ALJ found that Stephen's anxiety and depression—although medically determinable—were not severe. (*Id.* at PageID.35–37. At step three, the ALJ found that none of Stephen's severe impairments met or medically equaled a listed impairment. (*Id.* at PageIID.37–38). Next, the ALJ determined that Stephen had a residual functional capacity ("RFC") to perform light work with the following limitations:

> he can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently handle, finger, and feel bilaterally. He can occasionally operate foot controls. He cannot have

5

> concentrated exposure to fumes, dust, odors, gases, and poorly ventilated areas or pulmonary irritants as defined in the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles. He cannot work around hazards (unprotected heights or the operational control of dangerous moving machinery) but can avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. He can work in a moderate noise/light level setting (a light industrial to office setting). He must alternate (one foot at a time) the elevation of his feet to 12 inches while he is seated.

(*Id.* at PageID.38). At step four, the ALJ found that Stephen could perform his past work as a "technical supervisor," explaining that a "vocational expert testified that an individual with" Stephen's RFC could "work as a technical supervisor as" that occupation "is generally performed in the national economy." (*Id.* at PageID.42). The ALJ did not make any alternative findings at step five. (*Id.* at PageID.42–43).

### E. Background

#### 1. Medical Evidence

Stephen alleges that he cannot work due to a combination of physical and mental impairments. Relevant here, Stephen claims that his depression and anxiety contribute to his inability to work. (*Id.* at PageID.35–36).

Before he alleges to have become disabled, Stephen managed his depression and anxiety by taking Prozac. (*Id.* at PageID.304, 323). While on this antidepressant, Stephen typically presented to medical providers with unremarkable symptoms. At a July 2020 appointment, for example, Stephen denied "depression

and suicidal ideas." (*Id.* at PageID.303). He also displayed normal "behavior" and "thought content," and appeared to have a "normal mood and affect." (*Id.* at PageID.304). At an appointment the following year, Stephen reported "depression and insomnia," but denied being unable "to concentrate." (*Id.* at PageID.459). He displayed a "normal posture" and was "cooperative" throughout his appointment. (*Id.*)

A year later, Stephen reported that he stopped taking Prozac due to side effects. (*Id.* at PageID.361). Yet he stated that he did "not want to start another medication at" that "time." (*Id.*) Despite discontinuing Prozac, Stephen's behavior, thought content, and judgment appeared "normal," and he denied suicidal ideation. (*Id.* at PageID.362). And although his physician referred him to various mental health professionals, Stephen stated he had tried "counseling" in the past, he "did not find" it to be "helpful." (*Id.* at PageID.361, 364). The ALJ found no records suggesting that Stephen "engaged in treatment with a mental health professional" after this appointment. (*Id.* at PageID.36 (citing *id.* at PageID.364)).

## 2. The Administrative Hearing

Stephen testified at a hearing before the ALJ in January 2022. (*Id.* at PageID.50). Although Stephen testified that he was being treated for anxiety and depression, he described only mild symptoms. (*Id.* at PageID.59, 63). Indeed, while Stephen testified that Prozac affected his "memory and concentration" he stopped

7

taking medication months before his hearing. (*See id.* at PageID.36, 59, 361). And when he was not on medication, Stephen could "follow the storyline" of a television program "most of the time," and he could read newspaper and magazine articles. (*Id.* at PageID.61, 63). He also stated that he could "understand" and "remember" "basic instructions"—even if he could not always "carry" them "out." (*Id.* at PageID.63–64).

Stephen also believed that his anxiety and depression curbed his ability to socialize, sharing that he could no longer tolerate "crowds." (*Id.* at PageID.63). Yet Stephen also testified that he would socialize with "friends and family" (if they drove to visit him), and he had recently traveled to the Bahamas for a wedding and a ten-day vacation. (*Id.* at PageID.58). Although the ALJ allowed Stephen's attorney to examine him, she did not elicit any testimony regarding Stephen's mental impairments. (*Id.* at PageID.64–69).

### 3. The Vocational Expert's Testimony

After Stephen testified, the ALJ examined a Vocational Expert ("VE"). (*Id.* at PageID.69–70). The ALJ asked the VE to assume a hypothetical person with the same age, education, and work experience as Stephen who could perform a full range of "medium work" except that the individual is limited to: (1) "occasional" use of "ramps and stairs"; (2) no use of "ladders, ropes, or scaffolds"; (3) occasional "balanc[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing]"; (4) "[f]requent

8

handling, fingering, and feeling bilaterally," (5) "[o]ccasional" use of "foot controls laterally"; (6) "[n]o concentrated exposure to fumes, dusts, odors, gasses, [or] fully insulated areas of pulmonary irritants; and (7) no exposure to "hazards" beyond "ordinary hazards" such as "boxes on the floor" and "approaching people in vehicles." (*Id.* at PageID.71–72).

The VE testified that an individual with these limitations could perform Stephen's past relevant work in "flood covering" and as a "tech supervisor"—both as those jobs were performed by Stephen and as those jobs are "generally performed." (*Id.*) That individual could also work as a warehouse worker, medium work, approximately 110,000 jobs, Dictionary of Occupational Titles ("DOT") code 922.687-058; an industrial cleaner, medium work, 100,000 jobs, DOT code 381.687--018; and a hospital cleaner, medium work, 70,000 jobs, DOT code 323.687-010. (*Id.* at PageID.72–73).

The ALJ then asked the VE to assume that the same hypothetical individual was further limited to light work and "moderate noise" exposure. (Id. at PageID.73). The VE testified that these limitations would not limit the range of work the hypothetical person could perform. (*Id.*)

Next, the ALJ asked the VE:

> If this individual were further limited to no hazards. That's unprotected heights or the operational control—I beg your pardon. This individual were just limited to same

9

>limitations, but at the light level, but they—would the past work be performed?

(*Id.*) The VE responded that this individual could perform Stephen's past work as it is generally performed, but not as Stephen performed them. (*Id.* at PageID.73–74).

The ALJ then asked the VE to further assume that the hypothetical individual was limited to "simple[,] routine[, and] repetitive tasks "at the frequent level, but not at a production-rate pace . . . ." (*Id.* at PageID.74). He also asked the VE to assume that the individual could only perform "assembly-line work involving only simple[,] work-related decisions, with few, if any, workplace changes." The VE testified that this individual could not perform Stephen's past work. (*Id.*)

Next, the ALJ asked the VE to "go back to" the first three hypotheticals, eliminating any "nonexertional limitations," and further assume that the individuals described there "would need to alternate one foot at a time the elevation of feet while sitting" by twelve inches. (*Id.* at PageID.74–75). The VE stated that "based on [her] experience," the individual could only perform Stephen's past work "as generally performed." (*Id.*)

Last, the ALJ asked the VE whether an additional limitation "to occasional handling, fingering, and feeling" would change her answer to any of the previous hypotheticals. (*Id.* at PageID.75). The VE stated that it would not. (*Id.*)

The VE then explained her testimony was consistent with the DOT, except that she relied on her "professional work experience" to answer some of the ALJ's hypotheticals. (*Id.* at PageID.76).

**F.     Analysis**

    **1.     Whether the ALJ's RFC Finding Accounted for Prior Administrative Medical Findings He Found Persuasive**

Stephen first argues that the ALJ erred at step four by presenting the VE with a hypothetical RFC that was not supported by substantial evidence. (ECF No. 10, PageID.484–86). He explains that despite crediting a state agency psychologist's prior administrative medical finding that he "may have trouble handling highly stressful situations," the ALJ neglected to include any corresponding limitations in his RFC finding. (*Id.*) In other words, the ALJ's RFC finding is inconsistent with the evidence he relies on for support. (*Id.*)

But that argument misses a fundamental point: the state agency psychologist's opinion did not relate to Stephen's RFC. The regulations explain that a claimant's RFC is "the most" that the claimant can do "despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). Put another way, an RFC describes the conditions that are "necessary" for the claimant to work—not the claimant's "ideal or optimal work environment." *Horinek v. Saul*, No. 1:19-cv-2141, 2020 WL 4340987, at *9 (N.D. Ohio July 7, 2020). So, when a medical opinion or prior administrative medical finding suggests working conditions that give a claimant the "greatest chance of

11

success"—rather than conditions the claimant requires to work—an ALJ need not include those conditions in his or her RFC finding. *Id.*; *see also Hammons v. Comm'r of Soc. Sec.*, No. 2:21-cv-12933, 2023 WL 2263856, at *2 (E.D. Mich. Feb. 28, 2023); *Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1331 (D. Colo. 2016).

The state agency psychologist's opinion that Stephen "may have trouble handling highly stressful situations" is not an assessment of Stephen's limitations. (ECF No. 7-1, PageID.93). That Stephen "may have trouble" in stressful situations does not mean that he *cannot* handle stressful situations. (*See id.*) And the Consultant's statement that Stephen could at least tolerate "routine demands" does not imply that he could not tolerate anything more. (*See id.*) In fact, the state agency psychologist opined that Stephen had no work-related functional limitations concerning memory, understanding, concentration, persistence, social interaction, or adaptation. (*Id.*) And while the psychologist could have used clearer language, he suggested that Stephen would have no psychological limitations if performing work "for which his training[, ]education[,] and experience" prepared him. (*Id.* at PageID.94). Thus, the ALJ correctly interpreted the state agency psychologist's opinion as suggesting an optimal working condition and imposed an RFC consistent with that understanding.[1] *Cf. Horinek*, 2020 WL 4340987, at *9.

---

[1] Stephen does not argue that the ALJ failed to properly apply the standards for assessing medical opinions and prior administrative medical findings found in 20 C.F.R. § 404.1520c (2023). (ECF No. 10, PageID.484–86). Nor does Stephen argue that the ALJ could not

12

## 2. Whether the ALJ's RFC Finding Accounted for Stephen's Nonsevere Mental Impairments

Even if the ALJ supported his RFC findings with substantial evidence, Stephen argues that he did not properly articulate his rationale for finding no mental functional limitations. (ECF No. 10, PageID.473–84). At step two, an ALJ must consider whether the claimant has any severe, medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(iii) (2023). If the claimant has at least one severe, medically determinable impairment, the ALJ proceeds through the sequential evaluation process, considering all the claimant's medically determinable impairments—both severe and nonsevere. *Id.* § 404.1545(a)(2); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

To assess mental impairments at step two, the regulations require ALJs to follow a unique, "psychiatric review technique" ("PRT"). *Id.* § 404.1520a(a), (e). This technique requires the ALJ to begin by determining whether a claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). If, and only if, the ALJ finds a medically determinable mental impairment, the ALJ must then rate the claimant's abilities in four functional areas—including the claimant's ability to "concentrate, persist, or maintain pace"—on "the following five-point scale: none,

---

have relied on substantial evidence in finding that he did not need to avoid a highly stressful work environment. (*Id.*) Instead, Stephen argues only that the ALJ's RFC finding was inconsistent with his underlying rationale. (*Id.*) *See generally Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) ("'[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself.'").

mild, moderate, marked, and extreme." *Id.* § 404.1520a(b)–(c). From here, the ALJ must determine whether the mental impairment is severe and proceed through the five-step process accordingly. *Id.* § 404.1520a(d).

Following this process, the ALJ found that while Stephen's anxiety and depression were medically determinable, they were not severe because they caused only "mild" limitations in Stephen's ability to "concentrate, persist, or maintain pace," and they caused "no limitations" in any other functional area. (ECF No. 7-1, PageID.36–37 (cleaned up)). At the end of his step two analysis, the ALJ stated that his "residual functional capacity assessment" would "reflect[] the degree of limitation" he "found in" his PRT analysis. (*Id.* at PageID.37). And under the heading for his RFC assessment, the ALJ began his analysis by stating that he "considered all symptoms," "medical opinions," and "prior administrative medical finding(s) . . . ." (*Id.* at PageID.38).

Yet apart from a brief discussion of the state agency psychologists' prior administrative medical findings, the ALJ did not explicitly discuss Stephen's mental impairments under the heading denoting his RFC assessment. (*Id.* at PageID.38–42). Stephen argues that this omission warrants remand. (ECF No. 10, PageID.473–84). Although Stephen does not dispute that the ALJ relied on substantial evidence in finding that his mental impairments did not affect his RFC, he argues that the ALJ

14

should have at least "explain[ed]" why he chose not to incorporate any mental limitations into his RFC findings. (*Id.* at PageID.484).

Both parties are correct that the ALJ's decision not to find any functional limitations stemming from Stephen's mental impairments was not an error in itself. Nonsevere impairments do not necessarily cause functional limitations. *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018); *see* SSR 96-8p, 1996 WL 374184, at *5. A nonsevere impairment, by definition, is one that that "does not" have more than a "minimal" impact on the "claimant's ability to work." *Lennon v. Comm'r of Soc. Sec.*, No. 2:21-cv-12942, at *12 (E.D. Mich. Nov. 8, 2022) (first citing 20 C.F.R. § 404.1522; and then citing *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988)), *report & recommendation rejected on other grounds by Lennon v. Comm'r of Soc. Sec.*, 2023 WL 2733382 (E.D. Mich. Mar. 31, 2023). Nor do mild PRT findings "mandate" any corresponding functional limitations. *Phillips v. Comm'r of Soc. Sec.*, No. 3:22-CV-01144, 2023 WL 4078204, at *6 (N.D. Ohio Apr. 4, 2023). The functional areas evaluated under the PRT are "not an RFC assessment." *Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017). While significant PRT findings may correlate with work-related limitations, mild PRT findings "generally" do not correspond with a limited ability to perform "work activities." 20 C.F.R. § 404.1520a(d)(1).

15

Even so, although a nonsevere mental impairment "standing alone may" have only a minimal impact on "an individual's ability to do basic work activities, it may" contribute to a claimant's functional limitations when considered "in combination" with other impairments. SSR 96-8p, 1996 WL 374184, at *5; *see also Lennon*, 2023 WL 2733382, at *5. Thus, even mild PRT findings can translate to functional limitations. *See Lawrence J. v. Saul*, No. 19 CV 1834, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020).

For that reason, an ALJ must not only consider the impact of any nonsevere mental impairments when assessing a claimant's RFC, but the ALJ must also explain how any nonsevere mental impairments affected the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2). An ALJ must articulate the rationale for every finding in enough detail for a reviewing court to track the ALJ's reasoning—else the court cannot meaningfully review the ALJ's decision. *See Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at *3–4 (6th Cir. 1999) (quoting *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985)). And because it is possible for mild PRT findings to cause functional limitations, reviewing courts often require an explanation of the ALJ's rationale to determine why the ALJ did not account for a claimant's nonsevere mental impairments in their RFC. *E.g.*, *Lawrence J.*, 2020 WL 108428, at *3. Thus, numerous courts have held that where an ALJ finds even mild limitations in concentration at step two, the ALJ must either incorporate these

findings into the claimant's RFC or explain why these mild deficits do not cause any functional limitations.[2]

But that explanation need not be explicit. Often, an ALJ's summary of the evidence related to a nonsevere impairment suffices to explain why the ALJ did not find any corresponding functional limitations without any discussion "tying" that summary to the ALJ's finding. *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013); *see Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020). And ALJs also need not cabin their RFC analysis to the portion of their decision formally labelled as their RFC assessment: other sections of a written decision can tacitly explain why an ALJ's RFC finding did not account for a claimant's nonsevere impairments. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Emard*, 953 F.3d at 851–52; *cf. Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694 at *6–7 (E.D. Mich. July 24, 2017). Although an ALJ must consider all nonsevere mental impairments at steps four and five, an ALJ who thoroughly discusses a nonsevere impairment at step two need not "expressly revisit" that impairment later in the written decision. *Lennon*, 2023 WL 2733382, at *5 (citing *Emard*, 953 F.3d at 851–52); *see also Smith v. Comm'r of Soc. Sec.*, No.

---

[2] *E.g.*, *Andrick v. Comm'r of Soc. Sec. Admin.*, 669 F. Supp. 3d 819, 823 (D. Ariz. 2023); *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022); *Lawrence J.*, 2020 WL 108428, at *3; *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011).

17

2:22-cv-11964, \_\_\_ F. Supp. 3d \_\_\_, 2024 WL 416374, at *3 (E.D. Mich. Feb. 5, 2024). While it may be preferable for the ALJ to explicitly discuss why each nonsevere impairment failed to translate into functional limitations, the issue is simply whether the Court can follow the ALJ's rationale. *See Bailey*, 1999 WL 96920, at *3–4. And in evaluating the ALJ's reasoning, the Court should take "common sense, not technical perfection" as its "guide." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Considered in its entirety, the ALJ's decision adequately explains his conclusion that Stephen's mental limitations did not affect his functional abilities. At step two, the ALJ explained that while Stephen reported difficulty with concentration, he displayed normal cognition and concentration upon examination. (ECF No. 7-1, PageID.37 (citing *id.* at PageID.452, 456, 460)). He also admitted that he could "perform complex activities" such as driving and international travel. (*Id.* (citing *id.* at PageID.57–58)). Stephen further admitted that he could read newspaper and magazine articles and that he could follow storylines in television programs "most of the time." (*Id.* (citing *id.* at PageID.61, 63)). More generally, Stephen typically displayed few signs of psychological illness in front of medical providers, and he pursued only modest treatment for his depression. (*Id.* at PageID.35–36).

Although this discussion fell under the ALJ's step two analysis, the ALJ explained that he considered these same findings during his RFC assessment. (*Id.* at PageID.37); *see Emard*, 953 F.3d at 851–52; *Bledsoe*, 165 F. App'x at 411. And even in his formal "RFC assessment," the ALJ did not completely disregard Stephen's psychological symptoms. Indeed, the ALJ explained that he credited a medical opinion finding that Stephen could perform "any work for which his training/education and experience prepare[d] him." (ECF No. 7-1, PageID.41–42); *cf. Suttles*, 543 F. App'x at 826. This opinion stated that Stephen had no mental RFC limitations related to concentration, cognition, memory, social interaction, or adaptation. (ECF No. 7-1, PageID.93).

At bottom, the ALJ does not leave the Court to speculate as to why he did not find that Stephen's anxiety and depression caused functional limitations. *Cf. Lennon*, 2023 WL 2733382, at *5. The ALJ "pointedly omitted" any mental limitations from his RFC and supported this finding by citing a bevy of supporting medical evidence throughout the decision. *Suttles*, 543 F. App'x at 826. Accordingly, I suggest that the ALJ did not err by failing to explicitly articulate how he believed that Stephen's nonsevere anxiety and depression did not limit his RFC.

### H. Conclusion

For these reasons, Plaintiff's motion is **DENIED**, (ECF No. 10), the Commissioner's Motion (ECF No. 12) is **GRANTED**, and the ALJ's decision is

**AFFIRMED**.

Date: March 5, 2024                                    S/PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge